## *EX PARTE* THE PIEDMONT MANUFACTURING COMPANY,

### *IN RE* COOLEY v. PERRY.

1. DISTRESS WARRANT—ASSIGNMENT FOR CREDITORS.—A distress warrant levied upon goods of the tenant on the demised premises, gives to the landlord a first lien; and this would seem to be so, even if the goods so levied had previously passed into the possession of an assignee under an assignment by the tenant for the benefit of his creditors.
2. IBID.—CREDITOR'S ACTION.—A distress warrant may be levied after the institution of a creditor's action, but before order is passed calling in creditors, the landlord not being a party to the action.
3. INJUNCTION—PARTIES.—A temporary injunction restraining parties to the action and all other parties from interfering with goods of the principal defendant does not prevent the landlord, who was not a party to the action, from distraining these goods for past due rent; especially so when the distress was not made until after the injunction had expired.
4. DISTRESS FOR RENT—IN CUSTODIA LEGIS.—Goods *in custodia legis* may not be distrained for rent, but goods are not in the custody of the law when they are the subject of an action for administration and appointment of receiver, but not yet put into the hands of any officer or agent of the court.

Before IZLAR, J., Greenville, August, 1890.

This seems to have been a petition *ex parte* The Piedmont Manufacturing Company, *in re* A. Cooley & Co. *v.* Perry Brothers. The opinion states the case. The plaintiffs appealed on the following exceptions:

I. That his honor, the presiding judge, erred in holding that the Piedmont Manufacturing Company had priority over the other creditors of the firm of Perry Bros., although the rent in question was not due when the assignment was made, nor when this action was commenced. II. That this being a general creditor's bill, it is submitted that all creditors must share alike in the fund derived from the sale of the goods, and the Piedmont Manufacturing Company having no lien previous to the commencement of the action, could acquire none thereafter.

*Messrs. Perry & Heyward*, for appellants.

I. The assignment transferred the ownership of the goods to the trustee for the creditors, and there being no rent then in arrear, the landlord could have no priority over other creditors. 2 Johns. Ch., 189; 11 Wheat., 97; 12 Rich., 564; 1 Rich. Eq., 253; 1 Tread. Con. R., 120; 1 McCord Ch., 486.

II. The tenant being no longer the owner of the goods, the sheriff could make no valid levy upon them under his distress warrant, and certainly could not levy while the goods were *in custodia legis*, and protected by the restraining order of the court. Gen., Stat., § 1826; 2 Speer, 370; 1 McMull., 253; 1 Tread. Con. R., 120; 3 McCord, 41; Bradby on Distress, *115, *214; 14 N. Y., 27; High on Receivers, § 273; 3 Edw. Ch., 384.

III. If the Piedmont Manufacturing Company desires to share in the benefits of this action, it must come in on an equal footing with other creditors. 10 N. Y., 196; 1 Rich. Eq., 221; Pomeroy's Eq. Jur., § 407; 23 S. C., 280.

*Messrs. T. Q. & A. H. Donaldson*, contra, contended that the lease was neither forfeited nor terminated by the assignment, but went to the assignee as a part of the insolvent debtor's estate; and the assignee having taken possession of the demised premises became liable for the unpaid rent of the entire term—citing 29 S. C., 544; Burr. Assign. (3rd edit.), §§ 105, 374; Tayl. Land & T. (7th edit.), §§ 456, 109, 16; *Morton* v. *Pinckney*, 8 Bosw.

November 12, 1891. The opinion of the court was delivered by

Mr. Justice McIver. The defendants, Perry Brothers. occupied a store house belonging to the petitioner, The Piedmont Manufacturing Company, under a contract for a lease thereof for the year 1889, at an annual rental of five hundred dollars, payable in quarterly instalments of one hundred and twenty-five dollars each, the last of which was due on the 1st of January, 1890. During the term the said Perry Brothers, on the 19th of December, 1889, undertook to make an assignment to one J. Harper Donnald for the benefit of their creditors, and said assignee entered upon and used the said store house until the end of the last quarter, and until the 8th of February, 1890, when the stock

of goods in the store were sold under an order of the court, as will be hereinafter stated.

On the 24th of December, 1889, this action was commenced for the benefit of all the creditors of Perry Brothers, for the purpose, as we infer, of setting aside the deed of assignment above referred to, and subjecting the assets of the said Perry Brothers to the payment of their debts; and on that day an order was granted by his honor, Judge Norton, at chambers, "enjoining and restraining the defendants and all other persons from interfering with or removing said goods, or seeking to carry out the terms of the assignment, and requiring the defendants to show cause before him at Walhalla, on the 2nd day of January, 1890, why said injunction should not be continued in force until the final determination of the action." In consequence of a failure to observe the provisions of subdivision 3 of rule V. of the Supreme Court, requiring that the "Case" shall set forth "the names of all the parties to the action," we are not informed as to who were made parties to the action : but we infer, from the manner in which the question which we are called upon to determine has been presented, that the Piedmont Manufacturing Company was not a party.

On the 10th of January, 1890, the Piedmont Manufacturing Company, through its agent, "levied a distress warrant on the stock of goods in said store house, in the hands of J. H. Donnald, assignee," for the purpose of enforcing payment of the last quarter's rent, which fell due on the 1st of January, 1890. On the 13th of January, 1890, the temporary injunction previously granted, as above stated, was continued until the further order of the court; and on the 18th of January, 1890, it was agreed in writing, "that the right of the Piedmont Manufacturing Company for rent be reserved and transferred to the proceeds of sale of said stock of goods, the goods having been ordered to be sold by the court;" but when such order was granted does not appear, though the sale, as we have said, seems to have been made on the 8th of February, 1890. On the 28th of March, 1890, his honor, Judge Aldrich, "made a consent order or decree, by which he set aside and declared void the assignment above mentioned, and appointed the said J. Harper Donnald receiver of all and singular the

property, both real and personal, of the said Perry Brothers," and required "all creditors to prove their claims before the receiver, or be barred from participating in the fund." At the ensuing term of the court an application was made to his honor, Judge Izlar, for an order requiring the receiver to pay to the Piedmont Manufacturing Company the full amount of rent due for the quarter ending 1st January, 1890, which order, after hearing the facts as above stated, together with the argument of counsel, was granted. From this order plaintiffs appeal upon the grounds set out in the record.

Inasmuch as the so called deed of assignment has been "declared void" by the judgment of a competent tribunal, the case must be considered as if no attempt had ever been made to execute an assignment. So considering it, there can be no doubt that the landlord had a perfect right to levy a distress warrant upon the goods of the lessee remaining on the leased premises, upon default in payment of the last quarter's rent, and this would give the landlord the first lien on such goods, which, by the agreement of the parties above stated, was transferred to the proceeds of the sale. Indeed, it would seem that even if the deed of assignment had stood good, the landlord would still have the right to enforce payment of the rent due out of the goods in the hands of the assignee. Burrell on Assignments, section 374.

It is contended, however, that the action in this case, being in the nature of a creditor's bill, having been commenced before the rent fell due, the distress warrant could not be legally levied on the goods, but that the landlord must come in under this action and share alike with all the other creditors in the fund derived from the sale of the common debtor's goods. But it will be remembered that, so far as appears, the landlord was not a party to this action, and never was compelled to become so until the order calling in creditors was granted, and this was some time after the levy of the distress warrant.

Again, it is urged that the restraining order granted on the day of the commencement of the action—24th of December, 1889—was sufficient to prevent the execution of the distress warrant; but it will be observed that the landlord,

not being a party to the action, could not be bound by any order therein. And, in addition to this, it would seem that the temporary restraining order was only operative to the 2nd January, 1890, and was not continued in force until the 13th of January, 1890, and that in the meantime, to wit, on the 10th of January, 1890, the distress warrant was levied.

Finally, it is urged that the goods levied on under the distress warrant were *in custodia legis*, and therefore could not be the subject of such levy. While it is quite true that goods in the custody of the law cannot be the subject of levy, yet we are not prepared to admit that the goods in this case were in that condition when the distress warrant was levied. In *Gilman* v. *Williams*, 7 Wisc., 329, which we find in a note to 4 Am. & Eng. Encyc. of Law, 969, we see it was held that "property is in the custody of the law when it has been taken and is held by legal process in a lawful manner and for a lawful purpose." Looking to the reason of the rule, we think it may be said that property is in the custody of the law when it is found in the possession of some officer or agent of a court, whose duty it is to hold and dispose of the same in accordance with the order or mandate of the court. Now, can this be said of the goods in this case when the distress warrant was levied? They were not in the possession of any officer or agent of any court; and although the action when it was commenced did look to placing the property in that condition, yet it had not then been done, but the goods were actually in the possession and under the control of the debtor or his assignee, if the deed of assignment had not been declared void. No order had been passed requiring or authorizing any one to take possession and hold the same subject to the directions of the court, and we do not see how it can be said that the goods were *in custodia legis* at the time the distress warrant was levied.

It seems to us, therefore, that in any view of the case, the order appealed from must be sustained.

The judgment of this court is, that the order of the Circuit Court be affirmed.